IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ERIC LEE BROWN, AIS #216794,           )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )     CASE NO. 2:13-CV-905-WHA
                                        )                 (WO)
                                        )
KIM THOMAS, et al.,                     )
                                        )
          Defendants.                   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE[1]

## I. INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Eric Lee

Brown ("Brown"), a state inmate, in which he alleges that the defendants acted with

deliberate indifference to his health during a term of incarceration at the Easterling

Correctional Facility.[2]  Specifically, Brown alleges that the correctional defendants, Kim

Thomas and Kenneth Sconyers – respectively, the Commissioner of the Alabama

Department of Corrections and the warden of Easterling at the time his claims arose – failed

to ensure proper sterilization of hair clippers used by inmate barbers to provide haircuts to

inmates.  He also complains that the medical defendant, Dr. Jean Darbouze, denied him

---

[1]All cited documents and attendant page numbers referenced herein are those assigned by this court in the docketing process.

[2]The record demonstrates that Brown is currently incarcerated at the Fountain Correctional Facility and has been incarcerated at this facility since May of 2014.  *See Doc. No. 18.*

1

adequate medical treatment for a skin condition on the back of his neck. [3]  The defendants filed special reports, supplemental special reports and relevant evidentiary materials in support of their reports, including affidavits and certified copies of medical records, addressing the claims presented by Brown.  In these filings, the defendants deny they acted with deliberate indifference to Brown's health or medical needs.

The court entered orders allowing Brown the opportunity to file responses to the reports and evidentiary materials submitted by the defendants.  *Doc. No. 16; Doc. No. 25; Doc. No. 40.*  In the first of these orders, the Court advised Brown that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, the court may at any time [after expiration of the time allowed for filing responses] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Doc. No. 16* at 2-3.  Brown filed responses to these orders.

Pursuant to its previous order, the court now deems it appropriate to treat the correctional defendants' reports cumulatively as a motion for summary judgment and

---

[3]It appears that Brown presents claims against the defendants in both their individual and official capacities.  "[W]hen officials sued in [their official] capacity in federal court die or leave office, their successors automatically assume their roles in the litigation."  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Thus, with respect to Brown's claims against former commissioner Thomas in his official capacity, current commissioner Jefferson Dunn is the appropriate defendant.  As to the personal or individual capacity claims lodged against defendant Thomas, Thomas remains a proper defendant.  *Walton ex rel. R.W. v. Montgomery County Bd. of Educ.*, 371 F. Supp. 2d 1318, 1320 n.1 (M.D. Ala. 2005) (new official substituted for official capacity claim but not for individual capacity claim).

accord the same treatment to the reports filed by the medical defendant. Upon consideration of the defendants' motions for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's responses to the reports, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants maintain that they have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Where that is the case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may … grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file,"

demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities and [correctional medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable … or is not significantly probative …s summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions …, in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment

appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record … [including] pleadings, depositions, interrogatories, affidavits, etc. – and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record, including the guidelines for operation of correctional barber shops

and the medical records compiled contemporaneously with the treatment provided to Brown for his skin condition.  After such review, the court finds that Brown has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY - CORRECTIONAL OFFICIALS

To the extent that Brown lodges claims against defendants Thomas and Sconyers in their official capacities, these defendants are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

At all times relevant to the complaint, defendants Thomas and Sconyers were state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429;

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).  In light of the foregoing and under the facts of this case, defendants Thomas and Sconyers are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## IV.  DISCUSSION OF CLAIMS[5]

### A.  Sterilization of Clippers

Brown complains that correctional officials at Easterling failed to ensure that inmate barbers properly sterilized the hair clippers used for inmate haircuts.  The defendants deny this allegation and maintain that proper sterilization measures had been undertaken at Easterling for several years prior to Brown filing this action.  In addition, the defendants assert that in March of 2012 the Alabama Department of Corrections adopted guidelines for proper sterilization of hair clippers, and these guidelines have been regularly enforced at Easterling since their inception. The defendants further maintain that they had no

---

[5] In accordance with well-settled law, the court limits its review to the allegations set forth in the complaint.  *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (court refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

knowledge of any health issues suffered by Brown or any other inmate relating to the use of barbering tools at Easterling.

In his affidavit, defendant Sconyers addresses Brown's claim challenging the sterilization process as follows:

> Inmate Brown claims that inmate barbers at Easterling do not disinfect grooming utensils after each use. For years, our institution has willingly and consistently purchased and provided disinfectant for that specific purpose. Assigned inmate barbers sign for chemicals received and are instructed to clean and disinfect their equipment after each individual use. As new barbers are assigned, they are provided instructions as to the proper use of disinfectant and the importance of ensuring cleanliness of utensils used during the barbering process. I have received no evidence to indicate that this policy has been abused. I have received no previous grievance from Inmate Brown that alleges that diseases have been spread through the institution's haircut procedure [nor any other information indicating that the hair clippers are not properly sterilized].

*Correctional Defs.' Exh. 3 - Doc. No. 15-3*.

The applicable guidelines set forth the standards of operation for institutional barber shops and explicitly prohibit "[t]he use of any article that is not properly cleansed and disinfected[.]" *Correctional Defs.' Exh. 5 - Doc. No. 29-2* at 3, ¶10. These guidelines further provide the following:

Sanitation of Instruments (general):

1. Barbers/Stylists will scrupulously clean all barbering instruments immediately after use on each patron.

2. Razors, scissors, combs, clipper blades, and tools will be thoroughly washed with soap and hot water to remove all film, oil, and debris, and then dried with a clean towel or clean disposable tissue. Hair and debris may be removed from the exterior clipper surface with a stiff bristle brush used only for this purpose.

3.  If, in the course of [the] barbering process, it is suspected that a patron has a communicable disease or infection, the barbering instruments will be immediately washed and disinfected after use.

4.  Disinfection will be accomplished using a liquid chemical disinfectant specifically formulated for barbering tools use and carrying a label registered by the Department of Agriculture or Environmental Protection Agency.

5.  Disinfectant will be used in accordance with label instructions.

6.  Disinfecting solutions will be prepared frequently enough to ensure bactericidal effectiveness when used – or at least once daily.

7.  Containers for disinfecting instruments will be provided with covers and of sufficient size as to accommodate all instruments.

8.  At the close of each day's operation, all barbering tools used will be washed and disinfected.

9.  All barbering instruments disinfected in a chemical solution will be rinsed in running water to remove chemicals prior to use.

Sanitation of Instruments (specific):

1.  All multi-use tools, implements, and equipment used for services that come in contact with a client must be cleaned of all visible debris after each use and disinfected after each use by complete saturation or immersion for at least 10 minutes in an EPA-registered, hospital-grade disinfectant according to the manufacturer's directions.  Autoclave is [also] an acceptable method of sterilization.  Each institution shall provide correct wet disinfection and dry storage standards at all times.

   (a) Multi-use items constructed of nonporous materials such as metal, glass, or plastic for use on more than one client include, but are not limited to the following items: scissors, shears, brushes, combs, clips, reusable gloves, and any other metal tools/non-porous implements not listed above.

   (b) Single use items shall be discarded after being used one time. These items include: disposable gloves, cotton balls, cotton strips or swabs, neck strips and muslin strips or any items that cannot be disinfected.

2.  Wet disinfection standards for tools, implements, or equipment:

> (a) After cleaning, all tools, implements and equipment must be disinfected by complete saturation or immersion (enough solution to cover all surfaces of the item) for 10 minutes in an EPA-registered, hospital-grade disinfectant that is batericidal, viruscidal, fungicidal, and pseudomonacidal. The disinfecting solution must be changed daily and/or prepared according to the manufacturer's directions.

> (b) All tools, implements, or equipment that come in contact with blood or body fluids must be disinfected by complete immersion for a minimum of 10 minutes in an EPA registered disinfectant that is effective against HIV-1 and Human Hepatitis B Virus, or tuberculocidal that is prepared and used according to the manufacturer's directions.  Autoclave is [also] an acceptable method of sterilization.

*Correctional Defs.' Exh. 5 - Doc. No. 29-2* at 3-4.  "During [the relevant time period], the ADOC utilized Barbicide and Sea Breeze as disinfectants.  Inmates who acted as barbers were instructed to put the barbering tools into the Barbicide between each haircut." *Correctional Defs.' Exh. 4 - Doc. No. 29-1* at 1-2.[6]

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or welfare when the official knows the inmate faces "a substantial risk of serious harm" and, with such knowledge, disregards the risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A constitutional violation occurs only "when a

---

[6]The court takes judicial notice of its own records, which reveal that Barbicide is an EPA-registered, hospital-grade disinfectant.  *See Bracy v. Dunn, et al.*, Case No. 2:15-CV-234-WKW-WC (M.D. Ala.) - *Doc. No. 27-8* at 1.  Barbicide is an effective bacteriacide, germicide, pseudomonacide, fungicide and virucide.  *Id.*  When used as directed, "BARBICIDE has been found to be effective against:  Pseudomonas aeruginosa, salmonella enterica, Staphylococcus aureus (including MRSA), Trichophyton mentagrophytes, Herpes Simplex Type 1 and Type 2, Human Immunodeficiency Virus Type 1 (HIV-1) (AIDS virus), Influenza A Virus, Hepatitis B Virus and Hepatitis C Virus."  *Id.* at 2.

substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Al.*, 268 F.3d 1014, 1028 (11th Cir. 2001).

The law is well settled that both objective and subjective elements are necessary to establish an Eighth Amendment violation. With respect to the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference… . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … *[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment*." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety… . It is obduracy

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '''sufficiently culpable state of mind.''" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)... . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, "[m]erely negligent failure to protect an inmate … does not justify liability under section 1983." *Id*.

Pursuant to the aforementioned criteria, Brown is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference to safety claim against defendants Thomas and Sconyers. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To avoid entry of summary judgment on a properly supported motion, plaintiff must produce

sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) that the defendants responded to such risk in an objectively unreasonable manner; and (4) that the actions or omissions of the defendants caused his injuries).

Brown fails to demonstrate deliberate indifference to or reckless disregard of his health with respect to the use of hair clippers during his confinement at Easterling. The record is devoid of evidence that the defendants were aware of information from which an inference could be drawn that a substantial risk of serious harm to plaintiff existed. The record also reflects no evidence establishing that the defendants drew the requisite inference. Consequently, summary judgment is due to be granted in favor of the defendants on the plaintiff's claim of deliberate indifference with respect to the use of hair clippers.

### B.  Denial of Medical Treatment

Brown asserts that Dr. Darbouze denied him adequate medical treatment for a skin condition affecting the back of his neck. Brown also appears to argue that defendants Thomas and Sconyers acted with deliberate indifference because they did not intervene on his behalf by requiring that he receive a different mode of medical care for his skin condition than that prescribed by medical personnel.  These assertions entitle Brown to no relief.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221

F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice – negligence by a physician – is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need …, Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the

plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' … and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). This is likewise true for a claim reviewed under the objective reasonableness standard. Thus, to proceed on a claim challenging the constitutionality of medical care under either standard of review, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment. *Estelle*, 429 U.S. at 104-97, 97 S.Ct. 285. An allegation of negligence is insufficient to state a due process claim. *Daniels v. Williams*, 474 U.S. 327, 330-33, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)… ." *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) (Due to "the state of mind requirement for all due process violations[,] … medical malpractice and negligence claims are not actionable under § 1983, but are the

grist of state law.); *Kingsley*, __ U.S. at __, 135 S.Ct. 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1999)) (emphasis added) (It is well-settled "[t]hat … 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional due process.'"); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835, 836, 114 S.Ct. 1970 (A complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Daniels*, 474 U.S. at 332 (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries… . We have previously rejected reasoning that would make of the Fourteenth a font of tort law to be superimposed upon whatever systems may already be administered by the States."); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient to show deliberate indifference); *Barr v. Fla.*

*Dept. of Corr.*, 2011 WL 1365552, at *4 (S.D. Fla. April 11, 2011) (plaintiff due no relief where misdiagnosis, which led to improper insertion of feeding tube, did not rise to the level of deliberate indifference as misdiagnosis amounted to nothing more than negligence); *Null v. Mangual*, 2012 WL 3764865, at *3-4 (M.D. Fla. Aug. 30, 2012) (Misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs … fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence… .  At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) (citing *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986)) ("An allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section 1983 is reserved.  Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim."). Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate.

Furthermore, "to show the required subjective intent …, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' … which is in turn defined as requiring two separate things: 'awareness of facts from which

the inference could be drawn that a substantial risk of serious harm exists [] and …
draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted).   Thus,
deliberate indifference occurs only when a defendant "knows of and disregards an
excessive risk to inmate health or safety; the [defendant] must both be aware of facts from
which the inference could be drawn that a substantial risk of serious harm exists and he
must also draw the inference."   *Farmer*, 511 U.S. at 837; *Quinones*, 145 F.3d at 168
(defendant must have actual knowledge of a serious condition, not just knowledge of
symptoms, and ignore known risk to serious condition to warrant finding of deliberate
indifference).   Additionally, "an official's failure to alleviate a significant risk that he
should have perceived but did not, while no cause for commendation, cannot under our
cases be condemned as the infliction of punishment."   *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, … the Supreme Court has … emphasized that not 'every claim
> by a prisoner that he has not received adequate medical treatment states a
> violation of the Eighth Amendment.'   *Estelle*, 429 U.S. at 105, 97 S.Ct. at
> 291; *Mandel*, 888 F.2d at 787.   Medical treatment violates the eighth
> amendment only when it is 'so grossly incompetent, inadequate, or excessive
> as to shock the conscience or to be intolerable to fundamental fairness.'
> *Rogers*, 792 F.2d at 1058 (citation omitted).   Mere incidents of negligence or
> malpractice do not rise to the level of constitutional violations.   *See Estelle*,
> 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.'); *Mandel*,
> 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient'
> to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere
> medical malpractice does not constitute deliberate indifference).   Nor does a
> simple difference in medical opinion between the prison's medical staff and
> the inmate as to the latter's diagnosis or course of treatment support a claim
> of cruel and unusual punishment.   *See Waldrop*, 871 F.2d at 1033 (citing
> *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation

and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference in violation of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Scott*, 550 U.S. at 380.

The evidentiary materials filed by Dr. Darbouze address Brown's allegation of a lack of adequate medical treatment.  A thorough review of these documents demonstrates that the affidavits submitted by Dr. Darbouze are corroborated by the objective medical

records compiled contemporaneously with the treatment provided to Brown relative to his claim of deliberate indifference.

1. <u>The Correctional Defendants</u>.  Defendants Thomas and Sconyers aver that they are not in any way involved in decisions regarding medical treatment provided to inmates and "these decisions are [delegated] to the healthcare professionals employed by our medical provider, Corizon, Inc.[.]" *Correctional Defs.' Exh. 2 - Doc. No. 15-2* at 2; *see Correctional Defs.' Exh. 3 - Doc. No. 15-3* ("Inmate Eric Lee Brown has been routinely treated for his medical condition by Corizon Health Care Unit Professionals at [Easterling]. He, like all other inmates …, may freely sign up for sick call and receive medical attention for various illnesses and symptoms [from the on-site physicians and/or other health care professional].").

Brown has failed to establish deliberate indifference on the part of defendants Thomas and Sconyers.  Specifically, Brown has not demonstrated that the correctional defendants were aware of facts establishing "an objectively serious medical need," or that these defendants disregarded any known serious risk to Brown's health resulting from the skin condition on his neck.  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Farmer*, 511 U.S. at 838 (failure

to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference).

Insofar as Brown seeks to hold defendants Thomas and Sconyers liable for the treatment provided by medical professionals, he is likewise entitled to no relief, as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Defendants Thomas and Sconyers are therefore entitled to summary judgment on Brown's lack of adequate medical treatment claim.

2. <u>The Medical Defendant</u>.  Dr. Darbouze addresses the deliberate indifference claim presented against him in three separate affidavits. In his final and most comprehensive affidavit, Dr. Darbouze states, in pertinent part, as follows:

> I have first hand knowledge of the medical care and treatment that Eric Brown (AIS #216794) has received at Easterling.

> I have reviewed the medical file regarding the medical care and treatment of Eric Lee Brown (AIS #216794), during [the] time of his incarceration with the Alabama Department of Corrections at the Easterling Correctional Facility.

I am employed by Corizon, LLC.  Corizon is the entity that has the contract with the Alabama Department of Corrections to provide health care related services to inmates incarcerated at state correctional facilities.

I have personally seen, evaluated and treated Mr. Brown at the Easterling Correctional Facility.

I am aware of the allegations and claims made by Eric Lee Brown in this lawsuit.

*** 

In my initial affidavit filed on January 10, 2014, I made the statement in paragraph 11:

> Mr. Brown is enrolled in the primary care clinic for management of his Type II Diabetes.  Mr. Brown has been seen and treated by the health care staff at the Easterling Correctional Facility for chronic folliculitis and keloid at the back of his head and neck, a chronic inflammatory process involving the hair follicles.  He was also provided with proper treatment for a skin abscess in his posterior neck.  Mr. Brown's medical treatment has never been denied nor delayed in any form or fashion.  Every time Mr. Brown has sought medical treatment at the Easterling Correctional Facility, he has been seen and treated in an appropriate manner.

In my subsequent affidavit filed on April 20, 2016, I set forth as follows:

> I have reviewed the Court's Order of April 12, 2016 [Doc. #25].  I am aware that the Court wants me to supplement my Special Report specifically addressing the medical treatment provided to Mr. Brown for his alleged folliculitis and skin abscesses of his neck.

> To my knowledge, Mr. Brown never suffered from chronic folliculitis at any time that he was incarcerated with[in] the Alabama Department of Corrections at the Easterling Correctional Facility.

What Mr. Brown suffered from [while incarcerated at Easterling], and most likely still suffers from, are keloids. Keloids are raised overgrowths of scar tissue that occur at the site of a skin injury. Keloids can occur in areas where the skin is irritated such as where hair is cut on the back of an injury to his neck. Keloids are most common in African Americans. The skin is injured, fibrous tissue, called scar tissue, [that]forms over the wound to repair and protect the injury. In some cases, scar tissues grow excessively, forming smooth, hard growths called keloids. Keloids, in some circumstances, can be much larger than the original wound. While keloid scars may be itchy, they are usually not harmful to the health of the individual. The individual may experience discomfort, tenderness, or possible irritation.

Folliculitis is an inflammation of the hair follicles. Each hair on a human body grows out of a tiny pouch called a follicle. Folliculitis may be caused by bacteria. However, it can also be caused by yeast or another type of fungus. Folliculitis can be caused by damaged hair follicles. Shaving or wearing clothes that rub the skin can irritate the follicles which lead to folliculitis. Folliculitis usually looks like red pimples with a hair in the center of each one. The pimples may have puss in them, and they may itch or burn. When the pimples break open, they may drain puss, blood or both.

Keloid folliculitis, also known as folliculitis keloidalis nuchae is a conglomerate of small keloids forming a large thick scarring plaque at the juncture which connects the back of the neck and the scalp. It is most common in African American men.

What Mr. Brown suffered and/or suffers from is not the common folliculitis, being an inflammation of the hair follicles that can be treated with a course of antibiotics and topical solution. What Mr. Brown has suffered from is folliculitis keloidalis nuchae a condition refractor to any medical treatment. Mr. Brown was provided a topical steroid and selsum shampoo indicated to prevent the urge of itching. This condition may even reoccur after surgical removal of the affected area.

*Medical Def.'s Exh. A - Doc. No. 39-1* at 3-5 (internal paragraph numbering omitted).

In his April 20, 2016 affidavit, Dr. Darbouze also set forth a summary of the medical treatment provided to Brown for his keloids and related skin condition.

On August 4, 2012, Mr. Brown was seen by a nurse in the health care unit at the Easterling Correctional Facility.  Mr. Brown complained of chronic bumps to the back of his head with itching and burning.

I personally saw Mr. Brown on August 15, 2012 and noted that Mr. Brown had keloids.  I ordered a special shampoo that was sensitive and ordered that it be applied two times a week for six weeks.  A topical solution was also ordered to be applied daily for six weeks to Mr. Brown's neck.

Mr. Brown was next seen on April 2, 2013 again complaining of irritated bumps on his head.  I again saw Mr. Brown and again diagnosed him with irritated keloids.  I again prescribed special sensitive shampoo for Mr. Brown along with topical treatment for 90 days.

Mr. Brown was again seen in the health care unit on September 5, 2013.  At this time, Mr. Brown had developed a skin infection on the back of his head/neck.  Mr. Brown's abscess was drained and properly dressed by the medical staff in the health care unit.  The treatment order showing the daily cleansing and dressing by the nurses at the Easterling Correctional Facility of Mr. Brown's abscess is attached hereto… .  [T]he medical documentation clearly reflects that Mr. Brown's wound was cleaned and dressed continuously from 9/5/13 through 9/16/13.

During that time, Mr. Brown was receiving appropriate IV antibiotics and his wound healed well with appropriate treatment.

During the wound care treatment, Mr. Brown was kept in the infirmary at Easterling.  Mr. Brown was in fact returned to general population in a stable condition on September 9, 2013.

With the appropriate treatment given, the abscess on the back of Mr. Brown's head/neck … healed without complications [in September of 2013].

To my knowledge, and [upon] review of Mr. Brown's medical chart, the medical staff at the Easterling Correctional Facility did not treat Mr. Brown with any complications with regard to any abscesses on the back of his neck subsequent to September 2013.

Neither I, nor to my knowledge any of the other medical staff at the Easterling Correctional Facility, ever refused to see and/or provide appropriate medical treatment to Mr. Brown for his keloids and/or skin irritation on his head/neck.

*Medical Def.'s Exh. A - Doc. No. 28-1* at 4-5 (internal paragraph numbering omitted).  The details of the treatment provided to Brown as set forth by Dr. Darbouze are confirmed by the medical records filed in this case. Nothing before the court undermines the credibility of these records.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by medical personnel at Easterling in addressing Brown's complaints of bumps and itching on the back of his neck did not violate Brown's constitutional rights. The medical care Brown received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented by Brown simply fail to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'… to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference in violation of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

The medical records indicate that Brown received medical care for his complaints of bumps and irritations on the back of his neck, and that health care personnel rendered treatment to Brown for these conditions in accordance with their professional judgment. Based on well-settled law cited herein, Brown's mere desire for a different mode of medical treatment does not constitute deliberate indifference. In addition, Brown has failed to present any evidence which indicates that Dr. Darbouze knew that the manner in which he and other medical personnel provided treatment to Brown created a substantial risk to this inmate's health and that, with this knowledge, he consciously disregarded such risk.  The record therefore fails to show that health care personnel acted with deliberate indifference to Brown's medical condition.  Consequently, summary judgment is due to be granted in favor of defendant Darbouze.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 14, 2017 the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal

conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 31st day of January, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge